JON M. SANDS
Federal Public Defender
**WALTER I. GONÇALVES, JR.**
Assistant Federal Public Defender
State Bar No. 023659
407 W. Congress St., Suite 501
Tucson, AZ 85701
Telephone: (520) 879-7500
*walter_goncalves@fd.org*
Attorney for Defendant

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, | 20-mj-02951 (MSA) |
| Plaintiff, | **MOTION FOR REVIEW OF DETENTION ORDER** |
| vs. | |
| Carlos Victor Passapera Pinott, | |
| Defendant. | |

This motion may cause excludable delay under 18 U.S.C. § 3161(h)(1)(D).

Defendant, Carlos Victor Passapera Pinott, through counsel, moves for review of the Magistrate Judge's order of detention under 18 U.S.C. § 3145(b)("If a person is ordered detained by a magistrate judge, or by a person other than a judge of a court having original jurisdiction over the offense and other than a Federal appellate court, the person may file, with the court having original jurisdiction over the offense, a motion for revocation or amendment of the order. The motion shall be determined promptly.").

**I.    Background**

As of this motion, the government has not yet indicted Mr. Passapera. The court holds him on a complaint alleging that on August 9, 2020, he drove to a desert area from his home in Buckeye, by the Lukeville Port of Entry, arriving at 5:28 A.M. (Doc. 1). The government alleges Mr. Passapera drove to the Sky Harbor International Airport, and

parked his vehicle, arriving at 9:15 A.M. Id. Co-conspirator A arrived and parked next to his car. Id. Mr. Passapera retrieved two duffel bags from his trunk and placed them in the co-conspirator's car, who drove away. Id. Law enforcement stopped co-conspirator A's car and searched it. Id. Law enforcement discovered pills in the car. Id. Cocaine from the pills weighed 21 kilograms, heroin 1 kilogram, and fentanyl 1 kilogram. Id. Officers executed a search warrant in Mr. Passapera's home and found $329,000 of U.S. currency. Id. The found an added $40,000.00 in his car. Id.

The Assistant United States Attorney (AUSA) sent a proffer to defense counsel via e-mail the day before the detention hearing. He proffered this information to the court during the hearing.

- On August 10, 2020, the FBI executed a search warrant on a safe deposit box leased by Passapera and his wife at Wells Fargo since January 2020 and recovered $311,000 in cash.

- Between September 2019 and early April 2020, Passapera and his wife deposited $125,000 in cash into their various bank accounts. They also made several large cash purchases. Passapera's wife regularly deposited bundles of $20 bills at the bank. Passapera declared bankruptcy in 2015 and reported a monthly income of $5,000 ($8,000 gross).

- Surveillance of Passapera indicates he did not show up to work at the Ajo Station on at least five days in May 2020, and seven days in June 2020, even though the agency scheduled him to work those days and later certified time-and-attendance reports attesting that he worked those days. On many other dates between May and

July 2020, Passapera arrived home (1.5 hours from the Ajo Station) before the end of his shift. Passapera's assignment at the station was to use the MSC camera and direct agents on the ground to illegal border incursions, while also helping to account for the whereabouts and safety of ground agents.

• Passapera and his wife traveled to Puerto Rico in November 2019, February 2020, June 2020, and July 2020.

• Mr. Passapera violated his oath of office as Border Patrol Agent.

## II.   Argument

Magistrate Judge Ferraro was incorrect in finding Mr. Passapera poses a flight risk. Most of the government's proffer focuses on facts relating to or causing the offense, but not risk of flight. Due to strong community ties and the nature of the offense (including facts provided by the government), Mr. Passapera overcomes the presumption for detention that exists in drug cases. 18 U.S.C. § 3142(e). This court should release him.

## III.   Law

### A.   Procedural aspects of the Bail Reform Act

A person ordered detained by a magistrate may move for revocation of the order with the District Court. 18 U.S.C. § 3145(b). Review is de novo. United States v. Koening, 912 F.2d 1190, 1192-93 (9th Cir. 1990). "[T]he district court's review of a magistrate's detention order is to be conducted without deference to the magistrate's "factual findings" or "ultimate conclusion." Id.

The Bail Reform Act mandates release pending trial unless a judge decides that "no condition or combination of conditions will reasonably assure" the defendant's appearance

and the safety of the community.  18 U.S.C. § 3142(b), (e)(1).  "Only in rare cases should release be denied, and doubts regarding the propriety of release should be resolved in the defendant's favor."  United States v. Gebro, 948 F.2d 1118, 1121 (9th Cir. 1991).  Pre-trial release should be denied "only in rare circumstances."  In non-capital cases, pretrial release should be denied "[o]nly in rare circumstances."  United States v. Motamedi, 767 F.2d 1403, 1405; see also United States v. Salerno, 481 U.S. 739, 755 (1987) (upholding constitutionality of Bail Reform Act; "[i]n our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception").  The threat of flight must be serious.  See, e.g., United States v. Wasendorf, 2012 WL 4052834 (N.D. Iowa 2012) (holding that the fact that defendant's assets have been frozen cuts serious flight risk).

Because this case involves an allegation alleging a drug crime in which the penalty is ten years or more, there is a rebuttable presumption for detention.  18 U.S.C. § 3142(e).  If the government invokes the presumption, a defendant need present only some credible evidence showing the defendant is not a flight risk or a danger to the community, e.g., the defendant has the burden of production only.  United States v. Freitas, 602 F. Supp. 1283 (N.D. Cal. 1985).

The Pre-Trial Services Report can rebut the presumption.  United States v. Robinson, 733 F. Supp. 280 (N.D. Cal. 1990).  Using electronic bracelet "arguably" rebuts the presumption.  United States v. O'Brien, 895 F.2d 810, 816 (1st Cir. 1990).  The clear and convincing standard stays even when presumption exists.  United State v. Moore, 607 F. Supp. 489 (N.D. Cal. 1985).

**B.     Factors for consideration at the detention hearing.  18 U.S.C. § 3142(g).**

i.   *The nature and circumstances of the offense*

The allegations in the formal accusation and proffer by the government at the detention hearing relate to the crime of drug trafficking. The money found in the home and car come from drug trafficking and no other crimes. Allegations of leaving work early or abusing his position as agent with the border patrol are not charged as crimes. Nothing in the offense shows Mr. Passapera is a flight risk.

The government used the proffer to argue Mr. Passapera violated the trust of the government by not showing up for work and using work time to commit a crime. The government argues this is a case involving corruption. While the government may be correct in this assertion, corruption and breach of trust do not show Mr. Passapera will not show up for court dates and trial.

ii.  *The weight of the evidence against the defendant*

Although the weight of the evidence at this point appears to be strong, it is the least crucial factor for the court's consideration. United States v. Motamedi, 767 F.2d 1403, 1408 (9th Cir. 1985). The government seized evidence of financial gain from the drug crime. There is no evidence showing Mr. Passapera has other cash hidden. It is speculative to conclude he does, and even more speculative to believe he would flee the United States using this money. The government concedes Mr. Passapera limited the conduct relating to this case to a year. Further, there is no evidence Mr. Passapera has any connection or ties to other nations.

iii. *The defendant's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past*

*conduct, history relating to drug or alcohol use, criminal history, and record about court appearances, and criminal history.*

Mr. Passapera is 53 years old, born in Chicago, but moved to Puerto Rico with family at 13 years of age. He moved back to Illinois to attend college for two years before returning to Puerto Rico. In 2005 he enlisted in the military and lived in Colorado, before leaving for Arizona in 2010.

He and his wife have lived at their house, where they pay a mortgage, for the past 10 years. They live with their youngest daughter. Mr. Passapera has family in Arizona, Florida, and Puerto Rico. He and his wife have been married for 25 years. Pre-trial Services views his wife as a suitable third-party custodian. The government has not charged her with any crime. The money she deposited in $20.00 amounts comes from a settlement because of an accident. According to Mr. Passapera, agents even removed her wedding ring that Mr. Passapera bought using money from this settlement.

iv. *Whether at the time of the arrest the defendant was on probation, on parole, or on other release*

Mr. Passapera was a Border Patrol Agent until his resignation on Monday, August 11. He was not on probation, parole, nor any release during the arrest.

v. *The nature and seriousness of the danger to any person or the community posed by the defendant's release.*

The government has not argued Mr. Passapera poses a danger to any person or the community if released.

**IV. Conclusion**

While the allegations against Mr. Passapera are serious (21 kilograms of cocaine, 1 kilogram of fentanyl, and 1 kilogram of heroin, and much cash), this is only one part of the analysis needed by the Bail Reform Act, 18 U.S.C. § 3142(g)(1), (2). The court must give least emphasis to the weight of the evidence. Considerations under other factors overcome the presumption: his length of time in the community, strong family ties, and prior service to the military and United States as Border Patrol Agent for 10 years. The court should release him under the least onerous conditions pending trial. This could include ankle monitoring.

RESPECTFULLY SUBMITTED this 14th day of August, 2020.

JON M. SANDS
Federal Public Defender

*/s/ Walter I. Gonçalves, Jr.*
WALTER I. GONÇALVES, JR.
Assistant Federal Public Defender

Copy of the foregoing has been supplied
by electronic transmittal via the CM/ECF System:

Ryan Ellersick, III
Assistant United States Attorney